[606 NYS2d 691]

In the Matter of ANGEL ACEVEDO, Respondent, v LEE P. BROWN, as Police Commissioner of the City of New York, et al., Appellants.

First Department, January 27, 1994

## APPEARANCES OF COUNSEL

*Barry P. Schwartz* of counsel, New York City *(Carita R. Zimmerman* and *Leonard Koerner* with him on the brief; *O. Peter Sherwood, Corporation Counsel* of New York City, attorney), for appellants.

*Raymond E. Kerno* of counsel, Lake Success *(Lysaght, Lysaght & Kramer, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

KUPFERMAN, J.

Petitioner was initially terminated as a probationary police officer on April 30, 1986. The basis for such action was his failure to disclose on a medical history questionnaire dated December 21, 1984 that he had a history of frequent headaches and a back condition, although such conditions, as well as an incident on June 27, 1978 when petitioner, who was employed at the time as a meter reader for Con Edison, was caught in a crossfire while on duty and shot in the left ankle, had been disclosed in an earlier 1982 medical questionnaire. In the course of the Department's investigation of such omissions, petitioner was interviewed by a staff psychologist who questioned him about the shooting, which petitioner had described on his questionnaire as the most stressful incident in his life.

Based upon his interview of petitioner and a review of Con Edison's medical files, the psychologist concluded that petitioner had significantly distorted and willfully withheld facts regarding his psychological history, that petitioner would be at risk for inability to handle the stress of police work and, therefore, petitioner was psychologically unsuited to continue as a police officer. Two other psychologists reviewed the records and concurred that petitioner be decertified. In a follow-up interview, a consulting psychiatrist agreed with those findings, noting that petitioner played down his reaction to the shooting, and was "almost totally lacking in insight," concluding that if the data had been disclosed petitioner would never have been accepted originally. By notice dated April 29, 1986, petitioner was found not qualified and was terminated as a probationary officer the next day.

Petitioner appealed such determination to the New York City Civil Service Commission which found, in its determination dated June 26, 1987, that the documentary evidence provided by the City supported petitioner's testimony that the

Police Department had full knowledge of his back condition and headaches in 1982 and that Police Department psychologists had ample opportunity at that time to ask probing questions designed to elicit the presence of any lingering effects of the shooting incident. The psychologists, nevertheless, found petitioner psychologically qualified before his appointment. Moreover, the Board found that the Con Edison records were sent to the Police Department in January 1983 and that there was no evidence that they were reviewed by the Police Department psychiatrists prior to petitioner's appointment. Thus, the Civil Service Commission found, "the Police Department's conclusion in November 1985 that appellant would have been disqualified had this information been known prior to his appointment is without merit" and ordered petitioner's reinstatement within 10 days.

On December 28, 1987, petitioner underwent a psychological evaluation which he initially passed; however, such evaluation was rescinded after review of petitioner's records and, on February 24, 1988, he was again found to be psychologically unsuited for police work and was not reinstated. Petitioner then commenced a CPLR article 78 proceeding to compel his reinstatement, which proceeding was terminated with prejudice pursuant to a stipulation of settlement dated October 20, 1988 in which respondents agreed to reappoint petitioner as a probationary police officer with back pay on several conditions, including petitioner's submission to a medical examination and background investigation.

Petitioner was reinstated on November 14, 1988, but thereafter, despite his successful completion of the post entry level training course, he was never assigned to a precinct or issued a shield or weapon and was assigned instead to clerical duties at the Police Academy. Respondents also required petitioner to undergo an updated psychological restoration evaluation on February 9, 1989, which resulted in a finding that petitioner's reaction to the 1978 shooting was probably posttraumatic stress disorder which, along with his stress headaches and inability to acknowledge his past history, suggested his inability to cope with stress which made him unsuitable for police work.

Prior to this evaluation, petitioner had sought specific performance of the stipulation of settlement immediately restoring him as a probationary officer with all privileges, arguing that a new psychological examination was not routine and was intended to justify respondents' bad faith in not comply-

ing with the stipulation. In refusing to compel petitioner's full reinstatement as a police officer at that time, the IAS Court found that the psychological evaluation fell within the ambit of the stipulation's provision that petitioner's reinstatement was conditioned upon a "medical examination and background investigation" and did not, in and of itself, reflect that respondents were acting in bad faith. However, in the present article 78 proceeding reviewing petitioner's subsequent discharge on December 13, 1989, the same IAS Court properly found that respondents' actions and continued refusal to reappoint petitioner evidenced their determination to disqualify petitioner and to overrule the Civil Service Commission not to mention escape from the meaning of their stipulation.

Having charted their procedural course by failing to seek further review of the Civil Service Commission's 1987 determination, the respondents should not now be heard to complain inasmuch as their reinstatement of petitioner had a rational basis (see, Matter of Garayua v New York City Police Dept., 68 NY2d 970). Nor, should the doctrine of collateral estoppel apply in light of the limited scope of the earlier proceeding in which petitioner merely sought to enforce the stipulation of settlement.

Furthermore, all of the negative findings in the subsequent reports of the Department's doctors derive from their review of Con Edison's medical records and their perception of petitioner's reaction to the shooting incident. The relevance of those records and their interpretation, as well as the psychological evaluation of petitioner by the Police Department's staff psychologists and consultants, were clearly the basis for petitioner's initial termination, which reasoning was rejected by the Civil Service Commission. This, coupled with the Department's continuing attempts to deny petitioner reappointment as a police officer, amply justifies the IAS Court's finding that respondents' continued reevaluations and refusal to reappoint petitioner are merely attempts to circumvent the Civil Service Commission's ruling and their own stipulation of settlement.

Accordingly, the order and judgment (one paper), Supreme Court, New York County (Bruce McM. Wright, J.), entered June 29, 1992, which granted the petition and directed that petitioner be restored to his position as a New York City police officer with back pay from December 13, 1989, the date

of his termination, to the date of restoration, should be affirmed, without costs.

ELLERIN, J. P., WALLACH and NARDELLI, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered June 29, 1992, affirmed, without costs.